**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JIMMIE LEE PFEFFER, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS, | § § § § | |
| *Plaintiff*, | § § | Civil Action No.  SA-11-CV-959-XR |
| v. | § § § | |
| HSA RETAIL, INC., | § § | |
| *Defendant*. | § § | |

**ORDER**

On this day, the Court considered Plaintiff's Motion for Class Certification and Memorandum of Law in Support Thereof (Doc. No. 10).  For the following reasons, the Court **DENIES** the Motion.

**I. Background**

**A. Factual Background**

On October 31, 2011, Plaintiff Jimmie Lee Pfeffer ("Plaintiff") made a withdrawal from an ATM located at 26715 US HWY 281 N.  Plaintiff was charged a $1.50 fee for the transaction. While the ATM had an on-screen notice advising him of the transaction fee, the ATM allegedly lacked an additional physical notice attached to the ATM or within close proximity of it. Plaintiff alleges that this lack of an additional notice was a violation of the Electronic Fund Transfer Act ("EFTA"), codified at 15 U.S.C. § 1693 *et seq.* with its implementing regulation at 12 C.F.R. 205 *et seq.*, and he seeks statutory damages, costs, and attorney's fees for himself and on behalf of others similarly

situated pursuant to § 1693m.

## B. Procedural Background

Plaintiff filed his Complaint in this Court on November 15, 2011. (Doc. No. 1). On

December 23, 2011, Defendant filed a motion to dismiss the Complaint for failure to state a claim

upon which relief could be granted. (Doc. No. 4). Because the Court found that Plaintiff stated a

sufficiently plausible claim for which relief could be granted, the Court denied the motion. (Doc.

No. 17). Shortly after denying Defendant's motion, the Court considered, on February 6, 2012,

Plaintiff's motion to consolidate this case with eight other similar cases that were pending in the

district, all of which alleged the same violation of the EFTA.[1]  The Court denied Plaintiff's motion

after finding that, because each of the nine cases involved different defendants and independent fact

scenarios, the risks of consolidation outweighed any potential benefits. (Doc. No. 20). The Court

now considers Plaintiff's Motion for Class Certification (Doc. No. 10).

## II. Class Certification

Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(b)(3):

> All non-customers who made an electronic fund transfer, from an account used
> primarily for personal or household purposes, between October 31, 2011 through the
> date on which Defendant came into compliance with the ATM Fee posting
> requirements of the EFTA, at the ATM operated by Defendant located at 26715 US
> HWY 281 N., San Antonio, Texas and who were charged a "Terminal Fee."

Pl.'s Mot. Class Certif. at 5 (Doc. No. 10).  Defendant argues that certification is improper because

the proposed class is not clearly ascertainable and because common issues do not predominate.

---

[1] On the same day that Plaintiff filed this case, he also filed eight other lawsuits against eight
different defendants, each suit alleging that an ATM operator had failed to post a proper fee notice
on, or within close proximity of, an ATM. The case numbers of the eight other lawsuits are
5:11–CV–00961–FB, 5:11–CV–00962–OLG, 5:11–CV–00963–XR, 5:11–CV–00964–OLG,
5:11–CV–00965–HLH, 5:11–CV–00966–XR, 5:11–CV–00967–FB, and 5:11–CV–00968–XR.

Def.'s Resp. (Doc. No. 19).

Because the Court finds that Plaintiff has failed to satisfy two threshold requirements for class certification, the Court cannot find that certification is appropriate at this time.

## A. Legal Standard

Class certification is governed by Federal Rule of Civil Procedure 23. Before certifying a class, a district court must conduct a rigorous analysis of the Rule 23 prerequisites. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). To obtain class certification under Rule 23, a party must satisfy Rule 23(a)'s four threshold requirements of numerosity, commonality, typicality, and adequacy of representation, and the party must additionally satisfy the requirements of either Rule 23(b)(1), (2) or (3). *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). In addition to Rule 23's explicitly enumerated requirements, Rule 23 also carries with it an implied prerequisite that the class be adequately defined and clearly ascertainable. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 & n.3 (5th Cir. 2007) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).

While a district court has broad discretion when deciding whether to certify a class, the court must exercise its discretion within the framework of Rule 23. *Castano*, 84 F.3d at 740 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). "The party seeking certification bears the burden of proof." *Id.*; *see also Gene & Gene*, 541 F.3d at 325 ("We emphasize that it is the party seeking certification that bears the burden of establishing that the requirements of Rule 23 have been met.").

**B. Analysis**

Because the Court finds that Plaintiff has not met Rule 23(a)'s numerosity requirement and has not provided a sufficiently definite time period for the class definition, the Court cannot find that certification is appropriate.

**1. Numerosity**

Plaintiff has failed to establish the numerosity requirement of Rule 23(a)(1). In order to establish numerosity, a plaintiff must demonstrate that the class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). A mere allegation that the class is too numerous for joinder is insufficient. *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (citation and internal quotation marks omitted). Rather, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Id.* (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981)).

Here, Plaintiff has not satisfied the numerosity requirement because he has only presented the Court with a mere allegation that joinder of all members would be impracticable. In his Motion for Class Certification, Plaintiff offers the following explanation for why the Court should find the numerosity requirement to be met:

> Given the probable size of the class, it is clear that joinder of all members will be impracticable and that the numerosity requirement of Rule 23(a) is satisfied. Contemporaneous with the filing of his Motion for Class Certification, Plaintiff will be serving written discovery on Defendant, which will develop record evidence demonstrating that numerosity is easily satisfied in this case. Plaintiff will supplement his Motion—by way of a Reply Brief and supporting materials or otherwise—to put this evidence in the record.

Pl.'s Mot. Class Certif. 7 (Doc. No. 10).  Plaintiff's mere allegation that it is "clear" that joinder would be impracticable is not sufficient to establish numerosity.  While Plaintiff apparently intended

to supplement his Motion with supporting materials, at this point he has yet to provide any such additional evidence or explanation. In his Reply, Plaintiff makes no mention of the numerosity element. He does not offer any type of evidence indicating the probable number of class members, nor does he provide any explanation indicating how many individuals the class might ultimately contain. Thus, without being presented with even an estimate of the expected number of class members, the Court cannot find that numerosity has been satisfied.

**2. Time Period for the Class Definition**

Additionally, Plaintiff has failed to provide a sufficiently precise class definition.  Before a court may certify a class, it must ensure that the proposed class is clearly defined so that it will be "administratively feasible for [the] court to determine whether a particular individual is a member." *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. Jan. 25, 2001) (quoting *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983)).  A court must be able to identify class members without resorting to "intensive, individualized factual inquiries." *Dumas v. Albers Med., Inc.*, Case No. 03-0640-CV-W-GAF, 2005 U.S. Dist. LEXIS 33482, at *17 (W.D. Mo. Sept. 7, 2005) (citing *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981)).

Here, Plaintiff seeks to include in the class all non-customers who withdrew funds from Defendant's ATM "between October 31, 2011 through the date on which Defendant came into compliance with the ATM Fee posting requirements of the EFTA . . . ."  Since Plaintiff has not yet provided the date on which Defendant came into compliance with the EFTA, the class time period remains open-ended.  Thus, the definition is largely unhelpful because the parameters of the class remain undefined. Without an exact date on which to cut off class membership, the Court has no way of properly identifying those consumers who should be included in the class and those who should

be excluded.  As a result, the Court finds that Plaintiff has not provided a sufficiently definite time period for his class definition.

Furthermore, aside from the problematic open-ended time frame, the Court has an additional concern with the class definition. Specifically, the Court questions whether the definition would allow the Court to ascertain individual class members without resorting to fact-intensive, individualized factual inquiries.

To identify class members in this case, the Court would have to conduct a two-step inquiry. First, the Court would have to identify consumers who used Defendant's ATM to make an electronic fund transfer to or from an account within the relevant time period.  Second, because the EFTA's fee notice provision only applies to accounts established primarily for personal, family, or household purposes, see §§ 1693a and 1693b,[2] the Court would have to determine the nature of each consumer's account in order to ensure that consumers who made an electronic fund transfer to or from a commercial account were properly excluded from the class.  Although the Court recognizes that it is unlikely that commercial account holders would be using an ATM on a frequent basis, Plaintiff has not shown how the Court may conduct this second inquiry without resorting to individualized analyses.

Plaintiff contends that the Court can identify class members by looking at Defendant's ATM records.  Specifically, Plaintiff alleges that Defendant can generate data identifying each transaction

---

[2] The EFTA requires an ATM operator to provide proper notice if an ATM imposes a fee on a consumer for initiating an "electronic fund transfer."  § 1693b(d)(3).  The EFTA defines an electronic fund transfer as "any transfer of funds . . . to debit or credit an *account*[,]" § 1693a(7) (emphasis added), and an account is defined as an asset account "established primarily for personal, family, or household purposes . . . ." § 1693a(2).  Therefore, the EFTA only protects consumers who make transfers to or from accounts established primarily for personal, family or household purposes; consumers who make transfers to or from commercial accounts are not protected.

that occurred at the ATM, the date of the transaction, the amount of the fee charged, and the personal

account number ("PAN") of the consumer who conducted the transaction. Pl.'s Orig. Compl. ¶ 5.7

(Doc. No. 1).  Plaintiff further alleges that the PAN includes a bank identification number ("BIN")

which can be used to identify individual class members. *Id.* However, even if it were true that

Defendant could generate such information, Plaintiff has not shown how the Court could use either

the PAN or BIN to readily determine whether a consumer's account was established primarily for

personal or commercial use.  Thus, despite having each consumer's PAN and BIN, the Court would

still be faced with the task of determining the nature of each consumer's account.  Rather than being

a straightforward administrative procedure, it seems likely that the Court would have to make such

a determination on an individualized basis by looking at specific facts concerning each account, such

as the types of transfers to and from the account and the intent that each consumer had when setting

up the account.  Consequently, the likelihood that fact-intensive, individualized inquiries would be

required to determine the nature of each consumer's account suggests that it would not be

administratively feasible for the Court to ascertain class members.[3]

In their briefs, both parties discuss at length a federal district court opinion, *Cobb v. Monarch*

*Finance Corp.*, 913 F. Supp. 1164 (N.D. Ill. 1995), in which the court examined the EFTA's

definition of "account."  In *Cobb*, the court considered whether the plaintiff had stated a claim under

---

[3] The Court notes that the cases cited by Plaintiff in support of certification do not resolve these concerns.  Plaintiff cites *Mabary v. Hometown Bank, N.A.*, Civ. No. 4:10-CV-3936, 2011 WL 5864325 (S.D. Tex. Nov. 22, 2011); *Flores v. Diamond Bank*, No. 1:07-CV-06403, 2008 WL 4861511 (N.D. Ill. Nov. 07, 2008); and *Burns v. First Am. Bank*, No. 1:04-CV-07682, 2006 WL 3754820 (N.D. Ill. Dec. 19, 2006).  The *Mabary* court later decertified the class for reasons not apparent on the docket, and the other courts later found it impracticable to identify individual class members, resorting to public notice to ascertain class members rather than using individual PINs or BANs.

the EFTA and the dispositive issue was whether the plaintiff owned an account within the scope of

the Act's definition. *Id.* at 1174-75. To resolve the issue, the court looked at whether the plaintiff's

account was "established primarily for personal, family, or household purposes." *Id.* at 1174. To

interpret the EFTA's statutory language, the *Cobb* court looked at how the similar language of

another federal statute, the Truth in Lending Act ("TILA"), had been interpreted by other courts

around the country.  The *Cobb* court quoted the Fifth Circuit Court of Appeals and explained that

in order to determine the proper nature of an account a court must "'examine the transaction as a

whole' and in light of 'the entire surrounding factual circumstances.'" *Id.* (quoting *Tower v. Moss*,

625 F.2d 1161, 1166 & n.4 (5th Cir. 1980)).  The *Cobb* court elaborated further, once again quoting

a Fifth Circuit Court of Appeals opinion, and explained that a transaction "involv[ing] a profit

motive" indicates a business or commercial transaction rather than a personal one. *Id.* (quoting *In*

*re Booth*, 858 F.2d 1051, 1054-55 (5th Cir. 1988)).  After summarizing the pertinent case law, the

*Cobb* court proceeded to conduct an analysis of the plaintiff's bank accounts at issue in the case. The

court examined the nature of fund transfers to and from the accounts and ultimately found that all

of the accounts satisfied the EFTA's definition.  *Id.* at 1174-75.  Thus, the *Cobb* opinion illustrates

the proposition that, in order to determine whether a consumer's account falls within the scope of

the EFTA, a district court must engage in a fact-intensive inquiry to determine whether the account

was established primarily for personal, family, or household purposes.

   Plaintiff does not argue that the *Cobb* court's reading of the EFTA was erroneous, nor does

he argue that the court's comparison of the EFTA and TILA was misguided.  In fact, Plaintiff does

not suggest that the *Cobb* court's reasoning was inappropriate in any way.[4]   Likewise, this Court

finds no reason to reject the *Cobb* court's analysis.  As a result, it appears that in order to determine

whether consumers' accounts were used primarily for personal or household purposes, and thus

within the scope of the class definition in this case, this Court would have to conduct factual analyses

on an individualized basis.[5]   Thus, in the absence of a proposed method of how the Court may

ascertain class members without resorting to such individualized analyses, it appears the Court might

not be able to properly certify a class.

Plaintiff nonetheless argues that *Cobb* does not provide any basis for denying class

certification because the *Cobb* court ultimately found that class certification was appropriate. Pl.'s

Reply 5 (Doc. No. 21).  But *Cobb* is factually distinguishable.  In *Cobb*, the plaintiff alleged that the

defendants, finance companies, created bank accounts on her behalf without properly satisfying the

EFTA's disclosure requirements. *Id.* at 1169-70.   Specifically, the plaintiff alleged that the

defendants offered loan agreements purporting to authorize similar payment mechanisms, whereby

the finance companies would create a savings account on the plaintiff's behalf, electronically deposit

part of her paycheck into the account, and then immediately transfer money out of the plaintiff's

account and into the finance company's account. *Id.* at 1169.  The plaintiff alleged that all of the

---

[4] While Plaintiff does not take issue with the *Cobb* court's reasoning, he does argue that the court's analysis should not be widely construed. Pl.'s Reply 5 (Doc. No. 21) (arguing that the *Cobb* court's analysis is "not nearly so wide ranging, in depth, individualized or intensive as Defendant makes it out to be"). This assertion, which is unaccompanied with any further elaboration, is not supported by the Court's reading of *Cobb*.

[5] In his Reply, Plaintiff offers a lone conclusory statement, again without offering any evidence or elaboration, that "there will be no difficulty in determining the putative members of the class and [that the determination] does not require individualized proof at all." Pl.'s Reply 3 (Doc. No. 21). The Court is unsure how Plaintiff reached this conclusion and, as discussed above, finds several reasons to disagree.

class members signed the same forms and, as a result, had personal accounts created in the same manner. *Id.* at 1170. Therefore, since all of the class members' accounts were created through a similar mechanism for a similar purpose, and because funds were transferred to and from all of the accounts for a similar reason, it was possible for the *Cobb* court to make one class-wide determination regarding the personal nature of each consumer's account.

Here, however, Plaintiff has not shown how this Court could determine the nature of consumers' accounts through a single class-wide inquiry. Rather, because this case involves accounts that were established independently by different consumers, at different banks, and for different purposes,[6] it appears that the Court would have to consider each consumer's account separately. Thus, since the facts in *Cobb* are distinguishable from the facts in this case, the *Cobb* court's decision to certify a class is largely inconsequential.

At this time, the Court has no choice but to deny Plaintiff's Motion for Class Certification because he has not properly established numerosity and he has not provided a sufficiently definite time period for his class definition. If, as the litigation progresses, Plaintiff can establish numerosity and provide a definite time period for the class definition, then the Court may consider a second motion for class certification. However, if Plaintiff does decide to file another motion, he should address, either in the motion itself or through supporting briefs, the Court's concerns regarding the administrative feasibility of ascertaining individual class members.

### 3. Policy

Plaintiff also raises a policy argument in support of his Motion. Since individual statutory damages are low in this case, Plaintiff urges that "class relief is the only realistic alternative to no

---

[6] Plaintiff has not suggested that any class members' accounts are related in any way.

relief at all" for the majority of class members.  Pl.'s Mot. Class Certif. 13 (Doc. No. 10).  In support

of his argument, Plaintiff contends that "Congress recognized the importance of class actions in

protecting consumers under [the EFTA] by expressly authorizing class action remedies," *id.* at 6, and

further argues that class action litigation is "indispensable if consumers are to play a role in deterring

[mis]conduct . . . ."  *Id.* at 13.  However, the EFTA merely authorizes class action litigation; it does

not necessarily advocate it.  Furthermore, while class action litigation is a powerful mechanism that,

when appropriate, boasts a variety of benefits for the court system and the public, the class action

mechanism must only be exercised within the framework of Federal Rule of Civil Procedure 23.  If

an action does not satisfy the Rule 23 requirements, a court must not certify a class.  *See Castano*,

84 F.3d at 740 ("The decision to certify is within the broad discretion of the court, but that discretion

must be exercised within the framework of [R]ule 23.") (citation omitted).  The text of the EFTA

does not authorize a court to certify a class when it is otherwise inappropriate under Rule 23.

Accordingly, since the Court has found that Plaintiff has failed to meet Rule 23(a)'s numerosity

requirement and has also failed to provide a sufficiently precise class definition, Plaintiff's policy

argument cannot persuade the Court to grant his Motion.

### III. Conclusion

Because Plaintiff has not met Rule 23(a)'s numerosity requirement and has not provided a

specific time period for the class definition, the Court cannot find that certification is appropriate at

this time.  Consequently, the Court **DENIES** Plaintiff's Motion for Class Certification (Doc. No.

10).

The Court may reconsider its holding if, as the litigation progress, Plaintiff can satisfy the

numerosity requirement and can also specify a definite time period for the class definition.  However,

if Plaintiff decides to bring another motion, he should address the Court's additional concerns

discussed herein.

It is so ORDERED.

SIGNED this 24th day of May, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE